## STATE OF CONNECTICUT *v.* JOHN SAFFORD
## (8281)

SPALLONE, O'CONNELL and LAVERY, Js.

Argued April 18—decision released August 7, 1990

*Elizabeth M. Inkster,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Paul J. Ferencek,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Herbert Carlson,* assistant state's attorney, for the appellee (state).

LAVERY, J. The defendant appeals from the judgment of conviction, pursuant to a plea agreement, of sexual assault in the first degree in violation of General Statutes § 53a-70. He claims that the trial court should be reversed because (1) it failed to conduct an evidentiary hearing on the defendant's oral motion to withdraw his guilty plea, and (2) it sentenced the defendant after actively participating in pretrial plea negotiations.

The defendant was charged with first degree sexual assault and unlawful restraint. He initially pleaded not guilty, but as a result of plea negotiations during jury selection, he changed his plea on the sexual assault charge to guilty. In return, the state agreed not to press the unlawful restraint charge. The trial court, *Schaller, J.,* conducted an extensive canvass of the defendant, inquiring into the details of the sentencing arrangements and ascertaining that the defendant had not been coerced or threatened into pleading guilty. The trial court then accepted the defendant's guilty plea.

When the defendant appeared before the trial court, *Arena, J.,* for sentencing, he declared that he wished to withdraw his guilty plea and to elect a jury trial.[1]

---

[1] At the defendant's sentencing hearing the following colloquy took place:

"The Defendant: Good afternoon. The day that I pled guilty, I didn't quite understand what my attorney was telling me. That day I had like kind of had everything confused in my head and everything, but what I would gather in my own mind, right, I was told that on the condition that the plaintiff's grandfather was a judge and the plaintiff's father was a lawyer, if I went to a jury trial automatically I would lose, so I took that in my mind saying well, what's the sense of going to a jury trial if I'm going to lose automati-

The defendant claimed to have been confused at the time of his guilty plea, and to have been told that because the victim's grandfather was a judge and her father a lawyer, he would automatically lose if he stood trial. The trial court, noting that it had "before it no evidence that his plea was anything but voluntar[y]," denied the defendant's motion. The defendant appealed, and we affirm the trial court's judgment.

cally, so I might take what they give me. I'm not guilty. I'd like to change my plead back to not guilty because I'm not guilty. I'd like my chance to go to trial.

"The Court: Your plea was canvassed, was it not?

"The Defendant: Excuse me, sir?

"The Court: Your plea was canvassed by the judge that you pled?

"The Defendant: I don't know, sir. That day I was having migraine headaches because I was having trouble with the judge.

"[Defense Counsel]: Hold on. Let me answer the question. Jury selection was before Judge Schaller. I think there was a plan that he was going to be tried before Judge Higgins, but Judge Schaller I believe took the guilty plea. What he is claiming is no part of the canvass was a discussion that we had with this court and that was fully canvassed. And if he wants to withdraw his plea, I suppose the court will give him a short continuance to get a transcript.

"The Defendant: I'd like to have my opportunity in a jury trial to get a fair trial.

"The Court: Why should I do anything? This matter was called for jury selection before Judge Schaller. This court was involved in extensive discussions concerning this matter over a long period of time. That started when I was first assigned here in March of 1988. This defendant is familiar with the criminal justice system. He pleads to the charge on the eve of trial. Now, two months later or how much later, he indicates that he wishes to withdraw his plea. This court has before it no evidence that his plea was anything but voluntarily entered. . . . The court also can take knowledge of the fact he's represented by an experienced criminal defense lawyer. This court is not going to allow this defendant to play around with the criminal justice system. Motion for withdrawal of the plea of guilty is denied.

"The Defendant: Could I speak now, sir?

"The Court: No. Yes, you may. I'll set it—yes, you may speak, Mr. Safford. I'm going to continue to proceed with your sentence today.

"The Defendant: Okay. Can I speak now, sir?

"The Court: Yes.

"The Defendant: Okay. Sir. When I was in picking a jury, I had specific years in the case then. I'm told information that, you know, like this is what

The defendant first claims that the trial court's failure to hold, sua sponte, an evidentiary hearing on his motion to withdraw his guilty plea violated his due process rights. U. S. Const., amend. XIV; Conn. Const., art. I, § 8. Specifically, the defendant, relying on *State v. Crenshaw,* 210 Conn. 304, 312, 554 A.2d 1074 (1989), claims that the specific allegations he made when he moved to withdraw his guilty plea, taken as true, furnished a sufficient basis for the withdrawal of the plea and thus necessitated an evidentiary hearing on the motion. We disagree.

The state, citing *State* v. *Watson,* 198 Conn. 598, 504 A.2d 497 (1986), argues that, because the defendant did not request an evidentiary hearing on his motion to withdraw the plea, the court's failure to hold such a hearing is now unreviewable. This argument is meritless. *Watson* can be read to suggest no more than that the defendant's failure to request an evidentiary hearing is a consideration to be weighed by the reviewing court. Id., 612. The defendant preserved this claim by moving to withdraw the plea, and adequately briefed the issue in this court. We are, therefore, obliged to review it.

After a guilty plea is accepted but before the imposition of sentence, the court is obligated to permit withdrawal upon proof of one of the grounds in Practice Book § 721. Where the record of the plea proceeding

---

changed my mind. I am innocent. And inside, you know, I'm innocent, and I'd like to have my right to a jury trial. All right. The reason I changed my mind I was told, sir, that because of the plaintiff's grandfather is a judge and plaintiff's father is a lawyer, if I go on trial I am going to automatically lose. So what's the sense on going to jury trial if I'm going to automatically lose. So I just took what the prosecutor offered, which is, what, five years from what I'm told, and I didn't know it was ten years suspended after five until I got papers from my attorney. I didn't know about probation.

"Mr. Klein: I think that's enough.

"The Defendant: And I'm innocent. I'd like my opportunity to go to jury trial."

and other information in the court file conclusively establish that the motion is without merit, the trial court may dispose of the motion without holding an evidentiary hearing. *State* v. *Torres,* 182 Conn. 176, 185, 438 A.2d 46 (1980), citing *Fontaine* v. *United States,* 411 U.S. 213, 215, 93 S. Ct. 1461, 36 L. Ed. 2d 169 (1973); see also *State* v. *Morant,* 20 Conn. App. 630, 633, 569 A.2d 1140 (1990). If, however, any *specific* allegations of fact, taken as true, furnish a basis for withdrawal of the plea under § 721 and are not conclusively refuted by the record of the plea proceedings and other information contained in the court file, an evidentiary hearing is required. *State* v. *Torres,* supra, 185–86. Finally, the trial court may disregard any allegations of fact, whether contained in the motion or in an offer of proof, that are either conclusory, vague, or oblique. Id.; *State* v. *Morant,* supra.

In the present case, the defendant, in making his motion to withdraw, alleged that he "didn't quite understand" what his attorney was telling him, and that he "had everything confused." He also alleged that his plea was the product of coercion, in that he "was told that [because] the [victim's] grandfather was a judge and [her] father was a lawyer," he would "automatically lose" if he went to trial. Judge Arena, who was familiar with the pretrial history of the defendant's case, denied the motion to withdraw the plea, noting that the defendant was "familiar with the criminal justice system," and that he was "no novice to this court system."

Implicit in the defendant's claim that he believed he could not get a fair trial because of the victim's familial connections to the legal community was the assumption that he was unsophisticated enough to believe that his right to a fair trial was automatically jeopardized by the "fact" that the victim's father and grandfather

were legal professionals. The comments of Judge Arena indicate that, based on his familiarity with the defendant and the procedural history of his prosecution, he did not ascribe such naivete to the defendant, but rather viewed him as one experienced at exploiting the judicial system's potential for delay.

We note further that in making these allegations the defendant did not name the supposed relatives or even specify whether they practiced in Connecticut. The allegation thus is weakened by its lack of specificity. Further, the defendant did not attempt to show how these relatives of the victim would be able to influence the outcome of his trial. Lastly, the defendant did not disclose the source of his information. The weight given to such information, in the mind of a lay person, would vary according to the source. It is significant that the defendant did not allege that the source of the information was his own or any other lawyer. The trial court, accordingly, found that the defendant failed to present any ground that, "in [the] court's opinion, states that the plea . . . entered by [the defendant] was not entered voluntarily and with a full understanding of the plea agreement."

The record of the plea canvass supports the denial of the motion to withdraw. The agreed upon sentence, which Judge Arena ultimately imposed, was discussed and the defendant's understanding of it ascertained. The canvass was thorough and presented the defendant with numerous opportunities to clarify anything he did not understand, or to vent any concerns he may have had regarding the victim's family's legal connections. The court plainly told the defendant that he would not be able to change his plea again as of right once it was accepted by the court. The defendant's silence at the canvass regarding his claimed confusion and concern over the legal connections of the victim's family

supports the sentencing court's conclusion that these grounds were meritless, in that they did not bear on the defendant's decision to plead guilty. We affirm the sentencing court's denial of the motion to withdraw the plea.

The defendant next claims that his sentence was tainted by Judge Arena's extensive and allegedly improper participation in the plea negotiations. The sentencing court's participation in these negotiations, he claims, violated his federal and state constitutional rights to due process.

The defendant's protestations on appeal are belied by his failure to preserve this issue for review by moving for disqualification pursuant to Practice Book § 997.[2] The claim therefore appears before us swaddled in the hopeful, if threadbare, mantle of *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). See *State* v. *Cosby,* 6 Conn. App. 164, 172, 504 A.2d 1071 (1986). Except in the most extraordinary circumstances, however; see *State* v. *Evans,* supra; appellate claims must be the product of trial counsel's efforts, not those of appellate counsel sifting through the record after the fact, trawling for issues undreamt of at trial.

The prohibition against trial judges' participating in plea negotiations is not, in itself, a matter of constitutional law; *Flores* v. *Estelle,* 578 F.2d 80, 85 (5th Cir. 1978), cert. denied, 440 U.S. 923, 99 S. Ct. 1253, 59 L. Ed. 2d 477 (1979); provided that the plea is not judicially coerced and remains voluntary. Id. The available

---

[2] Practice Book § 997 provides: "A motion to disqualify a judicial authority shall be in writing and shall be accompanied by an affidavit setting forth the facts relied upon to show the grounds for disqualification and a certificate of the counsel of record that the motion is made in good faith. The motion shall be filed no less than ten days before the time the case is called for trial or hearing, unless good cause is shown for failure to file within such time."

record[3] does not show that the participation of Judge Arena, who was not the trial judge in this case but the presiding judge who supervised plea bargains, in the plea bargain resulted in a judicially coerced or otherwise involuntary plea. Accordingly, this unpreserved claim is not of constitutional proportion and will not be reviewed further. *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

Our refusal to review this claim is buttressed by the possibility that the defendant's failure to make his objections known at the sentencing was not mere inadvertence but a trial tactic. Permitting appellate review of completely unpreserved yet minimally supported claims of judicial bias resulting from participation in plea negotiations would clear the way for the most pernicious sort of sandbagging, whereby trial counsel, secure in the knowledge that he can appeal tomorrow what he does not preserve today, purposely neglects to move for disqualification of a judge and thus avoids annoying the judge who is preparing to sentence his client. Defense counsel was silent in the face of Judge Arena's references to the court's active participation

---

[3] Before sentencing the defendant, the court made the following remarks: "The Court: Record may reflect that this court's taking a very active part in all the discussions leading up to the entry of the plea. This court was involved in pretrial discussions I believe commencing last March or April of 1988. Mr. Safford was shown substantial consideration by the state in the nolling of other cases while this particular case was pending. The matter was continued on a number of occasions if the court recollects correctly. The victim in this particular case was not available to the state for a period of time because she was in the state of California, but also indicated an ability to return to this state in the event that a trial became necessary. Subsequently, this matter was reached for trial and, at that point, this defendant entered a plea. This court has heard nothing today that in any way in this court's opinion states that the plea that was entered by Mr. Safford was not entered voluntarily with a full understanding of the plea agreement. The plea was entered on the eve of trial. Mr. Safford now feels, in this court's opinion, that he can take advantage and be allowed to withdraw—be allowed permission to withdraw his plea of guilty. Mr. Safford is no novice to this court system."

in the plea negotiations. " 'When the principal participant in the trial whose function it is to protect the rights of his client does not deem an issue harmful enough to press in the trial court, the appellate claim that the same issue clearly deprived the defendant of a fundamental constitutional right and a fair trial . . . is seriously undercut.' [*State* v. *Huff*, 10 Conn. App. 330,] 338, [523 A.2d 906, cert. denied 203 Conn. 809, 525 A.2d 523 (1987)]." *State* v. *Chapman*, 16 Conn. App. 38, 48, 546 A.2d 929 (1988).

The judgment is affirmed.

In this opinion the other judges concurred.